**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

In re:

   **Virginia Frye**                                                                                                   Chapter 13 Case
          **Debtor.**                                                                                                       # 05-10004

*Appearances:*     *David Lynch, Esq.*                                                    *Douglas W. Wolinsky, Esq.*
                        *Burlington, VT*                                                           *Burlington, VT*
                        *Attorney for the Debtor*                                       *Attorney for Union Bank*

**MEMORANDUM OF DECISION**
**ON ENFORCEABILITY OF PRE-PETITION AGREEMENT**
**AND UNION BANK'S MOTION FOR RELIEF FROM STAY**

Union Bank seeks *ex parte* relief from stay in accordance with the terms of a forbearance agreement that was entered into by the Debtor, her husband and Union Bank as consideration for the Debtor's voluntary dismissal of her previous chapter 13 bankruptcy case (the "Forbearance Agreement"). The issue presented is whether the Forbearance Agreement signed prior to the filing of this case, in which the Debtor waived the application of the automatic stay in the event a subsequent bankruptcy case was commenced, is enforceable.

The Court holds that although such an agreement is not *per se* enforceable, under the facts of this case Union Bank is entitled to enforce the agreement unless the Debtor can demonstrate that there is sufficient equity in the property, or sufficient likelihood that the Debtor is able and likely to effectively reorganize, or sufficient prejudice to other creditors to outweigh Union Bank's right to such relief. The Court therefore orders that an evidentiary hearing be held to address these issues as a prerequisite to the Court making a determination on Union Bank's motion for relief from stay.

**BACKGROUND FACTS**

The pertinent facts are not in dispute. The Debtor and Mr. Frye have given Union Bank eight mortgages on various properties as collateral for their outstanding indebtedness to Union Bank of approximately $500,000 (collectively, the "Mortgages").

After the Debtor and Mr. Frye allegedly defaulted on the Mortgages, Union Bank initiated a foreclosure proceeding in Caledonia Superior Court, Docket No. 218-8-02 Cacv, styled *Citizens Savings Bank and Trust Com v. Berton R. Frye, et al* (the "Foreclosure Proceeding"). On May 8, 2003, Union Bank obtained an Amended Judgment Order and Decree of Foreclosure in the Foreclosure Proceeding which set a final redemption date of May 12, 2003 (the "First Redemption Date").

On May 7, 2003, just five days before the First Redemption Date, the Debtor and Mr. Frye filed a joint petition for relief under chapter 13. In re Frye, No. 03-10710 (the "Debtor's First Bankruptcy Case"). On June 24, 2003, the Debtor and Mr. Frye's cases were severed (No. 03-10710 doc. # 22) and Mr. Frye's bankruptcy case was dismissed (No. 03-10959 doc. # 3). The Debtor's First Bankruptcy Case was ultimately dismissed on January 8, 2004, after Union Bank and the Debtor entered into the Forbearance Agreement.

The Forbearance Agreement contains the following provisions:

> 3.10    If, prior to repayment in full of their obligations to the Bank, the Fryes, either jointly or individually, file a petition for relief under any chapter of the United States Bankruptcy Code, the Bank shall be entitled, as specific consideration for this Forbearance Agreement, to *ex-parte* [sic] relief from the automatic stay with respect to all of the real and personal property pledged to it by the Fryes.

> 3.16    The Borrowers hereby acknowledge and affirm that they are entering into this Forbearance Agreement after having a full and fair opportunity to evaluate its [sic] situation and after consulting with their own legal and accounting experts, and that by entering into this Forbearance Agreement they are not relying on any representations of the Bank, express or implied, or of its officers, directors, agent, employees or attorneys.

Under the terms of the Forbearance Agreement, the Debtor and Mr. Frye were to sell a certain portion of their land and use the proceeds to redeem the mortgaged property from Union Bank. The Debtor and Mr. Frye obtained an extension of the First Redemption Date to December 1, 2004 (the "Second Redemption Date"), under the terms of the Forbearance Agreement. Later, Union Bank, the Debtor and Mr. Frye agreed to an additional extension of the Second Redemption Date until January 3, 2005 (the "Third Redemption Date").

On the Third Redemption Date, the Debtor filed the instant chapter 13 bankruptcy case. Union Bank responded to the bankruptcy case, as envisioned in the Forbearance Agreement, by filing an *ex parte* motion for relief from stay, and the Debtor has interposed opposition to that motion praying that the Court decline to enforce the Forbearance Agreement.

## DISCUSSION

A number of courts have addressed the issue of the enforceability of so-called pre-petition waivers. However, neither of the memoranda of law filed by the parties nor the Court's research has produced any cases by the Second Circuit or the District of Vermont addressing this point. Hence, the Court treats this as an issue of first impression in this District.

### THE CASE LAW

While some courts have held that such waivers are valid, other courts have held to the contrary. See In re Excelsior Henderson Motorcycle Mfg. Co., 273 B.R. 920 (Bankr.S.D.Fla.2002) (enforcing a pre-petition

2

agreement); In re Shady Grove Tech Ctr. Assoc. Ltd. P'ship, 216 B.R. 386 (Bankr.D.Md.1998) (setting forth several factors as to whether cause exists to warrant relief from stay); In re Atrium High Point Ltd. P'ship, 189 B.R. 599 (Bankr.M.D.N.C.1995) (holding that pre-petition waivers are enforceable in appropriate cases); In re Priscilla Cheeks, 167 B.R. 817 (Bankr.D.S.C.1994) (enforcing a pre-petition forbearance agreement); In re Jenkins Court Assoc. Ltd. P'ship, 181 B.R. 33 (Bankr.E.D.Pa.1995) (holding that a pre-petition agreement would not be enforced without further development of the facts); In re Sky Group Int'l, Inc., 108 B.R. 86 (Bankr.W.D.Pa.1989) (holding that a pre-petition waiver was not self-executing or *per se* enforceable); In re Club Tower, L.P., 138 B.R. 307 (Bankr.N.D.Ga.1991) (holding that pre-petition waivers are enforceable). Although not dealing with identical facts, the Court finds that the rationale of the Excelsior and Atrium cases provide the best guidance on the issue as it is presented in this case.

      The debtors in Excelsior and Atrium entered into pre-petition agreements as a result of a negotiated provision of a plan of reorganization in a prior bankruptcy case. Like the courts in Atrium and Excelsior, the Court finds the fact that the pre-petition waiver before it was agreed upon in the context of a prior bankruptcy case to be significant. "Enforcing the Debtor's agreement under these conditions does not violate public policy concerns. This is not a situation where a prohibition to opposing a motion to relief was inserted in the original loan documents...." Excelsior, at 924 (citing Atrium at 607). The Court also finds that the absence of court confirmation of the Forbearance Agreement does not diminish the applicability of Atrium and Excelsior to the instant dispute. Those courts were concerned about distinguishing post-bankruptcy waivers from waivers in original loan documents. Here, the waiver was part of the Forbearance Agreement which was entered into after the Debtor's First Bankruptcy Case was filed; it was not in the original loan documents. Hence, the reasoning of Atrium and Excelsior is applicable in this case.

      In Atrium, the debtor managed and leased commercial office space in a two-story building. After several years of this operation, the debtor encountered difficulty in servicing its mortgage on the building. Although the debtor's mortgage holder allowed the debtor to modify its obligation several times, the debtor nevertheless ended up in chapter 11. As a part of the plan in its chapter 11 case, the debtor and its mortgage holder entered into an agreement whereby the debtor would not oppose relief from the stay to the mortgage holder in any subsequent case that the debtor might file. See Atrium at 602-03. Just as before, the debtor was unable to meet its expenses and defaulted on its obligation to its mortgage holder. Soon thereafter, the debtor filed a second chapter 11 case. Based on the plan provision in the prior case, the mortgage holder promptly moved for relief from stay. However, the debtor opposed the motion and presented affidavits of third-party creditors who objected to the mortgage holder's motion. The court noted that all but one of these objecting third-party creditors assented to the debtor's plan in its prior case. See id. at 604, n. 2.

3

After a thorough review of the authority on both sides of the issue, the Atrium court held that "pre-petition waivers are enforceable in appropriate cases." Id. at 607. First, the court discounted the notion that pre-petition waivers in single asset cases are effectively a prohibition to filing bankruptcy. The court explained that up until relief is granted to the creditor who is a party to the pre-petition agreement, the debtor has received the protection of the stay vis a vis other creditors and retains all the rights provided to a debtor in bankruptcy. See id. at 607 (citing Club Tower, 138 B.R. at 311-12).

Second, the court addressed the bargain-for-exchange principle involved in arriving at the agreement in the prior case. The court noted that the debtor received a low interest rate and extension in exchange for the debtor's covenant not to oppose relief in a subsequent case. See id.

Lastly, the court turned to the issue of objecting third-party creditors and held that a debtor's pre-petition waiver of relief from stay cannot bind third parties. See id. Therefore, in the presence of objecting third parties, the court concluded that it must consider all the factors as to whether sufficient "cause" exists to warrant relief from stay, including: (1) the circumstances under which the pre-petition waiver arose; (2) the substance of the third-party objections; and (3) whether there is equity in the collateral. Because there was equity in the collateral, the court found that the objections of the third-party creditors outweighed the pre-petition waiver. Accordingly, since the mortgage holder's motion for relief was based on the debtor's pre-petition waiver, the court denied relief from stay. See id. at 608.

Similar to the debtor in Atrium, the debtor in Excelsior experienced difficulty servicing its loan which resulted in the debtor filing a chapter 11 petition. Pursuant to the debtor's chapter 11 plan, the debtor restructured its debt to its secured creditor. The debtor also agreed to a plan provision whereby the debtor would not oppose relief from stay as to that secured creditor in any subsequent bankruptcy case for three years. The plan was confirmed by the bankruptcy court. See Excelsior at 921. Approximately one year after the effective date of its plan, the debtor defaulted under the terms of the debt restructuring. The secured creditor sought and obtained a judgment against the debtor. On the day the public auction of the collateral was to take place, the debtor filed a second chapter 11 case. In accordance with the plan provision in the debtor's prior case, the secured creditor moved for relief from stay. See id. at 922.

Relying on the holding in Atrium, the court in Excelsior found that the debtor's pre-petition waiver of the automatic stay was enforceable. See id. at 924. Therefore, the court granted the secured creditor's motion for relief from stay. See id. at 924-25. However, unlike Atrium, there were no third party creditors objecting to relief from stay and the debtor did not dispute that it had no equity in the collateral.

### THE FACTORS

The Court finds the analysis of the Atrium court to be compelling. Although pre-petition agreements waiving the protection afforded by the automatic stay are enforceable, such waivers are neither *per se*

4

enforceable, nor self-executing. See e.g., In re Sky Group, 108 B.R. at 86. The Court further finds that in deciding whether relief from stay should be granted based on such waivers, the factors identified by the Atrium court must be considered:

(1) the sophistication of the party making the waiver;
(2) the consideration for the waiver, including the creditor's risk and the length of time the waiver covers;
(3) whether other parties are affected including unsecured creditors and junior lienholders, and
(4) the feasibility of the debtor's plan.[1]

This Court also considers the following factors essential to the determination:

(5) whether there is evidence that the waiver was obtained by coercion, fraud or mutual mistake of material facts;[2]
(6) whether enforcing the agreement will further the legitimate public policy of encouraging out of court restructurings and settlements;[3]
(7) whether there appears to be a likelihood of reorganization;[4]
(8) the extent to which the creditor would be otherwise prejudiced if the waiver is not enforced;[5]
(9) the proximity in time between the date of the waiver and the date of the bankruptcy filing and whether there was a compelling change in circumstances during that time;[6] and
(10) whether the debtor has equity in the property and the creditor is otherwise entitled to relief from stay under § 362(d).

The weight given to each factor will vary on a case-by-case basis and must be left to the sound discretion of the court, based upon the equities, facts and circumstances presented. Similarly, the determination of whether a hearing is necessary to make findings on some of these factors must be made on a case-by-case basis, depending upon the record available to the court.

---

[1] See Shady Grove at 390 (quoting In re Merridale Gardens Ltd. P'ship, *unpublished op.* No. 95-1-3091 (Bankr. D. Md. October 19, 1995) aff'd *in unpublished op.* at No. S-95-3334 (D.Md. Feb. 28, 1996)).

[2] In re Orange Park South Partnership, 79 BR 79, 82 (Bankr. M.D. Fla 1987).

[3] In re Club Tower, L.P., 138 BR 307, 312 (Bankr ND Ga 1991).

[4] In re Powers, 170 B.R. 480, 484 (Bankr D. Mass 1994)

[5] Id.

[6] In re Merridale Gardens Limited Partnership, *unpublished op.* No. 95-1--3091 PM (Bankr D Md Oct 19, 1995) aff'd *in unpublished op* at No S-95-3334 (D. Md. Feb. 28, 1996).

5

In essence, this Court agrees with the great weight of authority that has developed in this area of the law and will enforce pre-petition stay waivers even if the bankruptcy filing was not in bad faith and even if the debtor has some equity in the property which would typically negate the availability of relief under § 362(d), if other compelling factors are present. See Sally S. Neely, Pre-Petition Waivers of the Automatic Stay: Are they Enforceable?, SHO54 ALI-ABA 99 (2003). Moreover, once the pre-petition waiver has been established, the burden is upon the party opposing enforcement to demonstrate that it should not be enforced. In re B.O.S.S. Partners I, 37 B.R. 348, 351 (Bankr. M.D. Fla 1984).

### APPLICATION OF THE FACTORS

**(1)    Sophistication of the Party Making the Waiver**

In the instant case, the Debtor entered into an agreement in the context of achieving a voluntary dismissal of a prior bankruptcy case and both she and Union Bank were represented by counsel. The Debtor and Mr. Frye had been involved in this issue both in the Debtor's First Bankruptcy Case and the Foreclosure Proceeding. Therefore, the Court finds that the Debtor, with the assistance of her counsel, was sufficiently sophisticated to enter into, understand, and be bound by the Forbearance Agreement. Thus, this factor would tip the scales in favor of enforcing the agreement.

**(2)    Consideration for the waiver**

The Court finds that adequate consideration was exchanged on both sides in connection with the Forbearance Agreement,. The Debtor received additional time to cure the defaults of the Mortgages and an extended redemption period, nearly 19 months after the First Redemption Date, in exchange for the Debtor's consent to *ex parte* relief from stay in any subsequent bankruptcy filing and the Debtor's granting of additional collateral to the bank. Based on these conditions, Union Bank agreed not to exercise its otherwise available remedies with respect to the Mortgages. Hence, this factor also weighs in favor of enforcing the agreement.

**(3)    Whether Other Parties are Affected**

The Court cannot ascertain whether granting relief from stay to Union Bank, based on Debtor's pre-petition waiver, will prejudice other creditors without further development of the record. While Union Bank is by far the Debtor's largest secured creditor, the Debtor has additional secured creditors. She also has unsecured claims of approximately $ 9,843.00 that are promised a dividend of 100% under the Plan. It is not clear from the current record whether granting Union Bank relief from stay would adversely affect these other creditors because the Court does not have enough information to ascertain how realistic these creditors' prospects are under the Plan. If the Debtor has the equity she claims, the Plan is confirmed, and she is able to complete the Plan, then it appears that unsecured creditors would receive a significant distribution, and could be prejudiced by the Court's granting the Union Bank motion. However, a determination of the extent to which other creditors would be prejudiced by the granting of Union Bank's motion must be deferred until

6

after the presentation of more evidence.

**(4)    Feasibility of the Debtor's Plan**

Although the Debtor has filed a chapter 13 plan (doc. # 16) (the "Plan"), it is too early in the case to assess the feasibility of the Plan. The Plan contemplates the sale of three parcels of the mortgaged property to satisfy tax liens and the arrearage owed to Union Bank. This is less than the Debtor promised to Union Bank in the Forbearance Agreement. In particular, the Forbearance Agreement acknowledged the validity of the Union Bank debt and required the Debtors to sell so much of the mortgaged lands as necessary to satisfy the full Union Bank indebtedness. In the Plan, the Debtor disputes the balance due Union Bank and does not address satisfaction of the Union Bank debt at all, other than to cure the arrears. Based upon the Debtor's prior performance in chapter 13, her failure to consummate her obligations under the Forbearance Agreement, her failure to include in the Plan the provisions promised in the Forbearance Agreement, and her failure to address payment of any part of the Union Bank claim other than the arrears, it does not appear to the Court that the Debtor's Plan is consistent with the Forbearance Agreement or feasible. Thus, analysis of this factor must be deferred until after an evidentiary hearing.

**(5)    Whether Waiver Obtained by Coercion, Fraud or Mutual Mistake of Material Facts**

There is no evidence before the Court that Union Bank obtained the waiver by coercion, fraud or mutual mistake of material facts – "traditionally recognized as the only valid bases to rescind an agreement." In re Orange Park South Partnership, 79 BR at 82. Indeed, the Debtor does not dispute the validity of the Forbearance Agreement, but rather asserts that her bankruptcy filing should relieve her of the obligations she undertook when she executed the Forbearance Agreement (docs. ## 24 and 25).[7] Hence, the analysis of this factor tips the balance in favor of enforcing the Forbearance Agreement.

**(6)    Whether Enforcing Agreement Will Encourage Out of Court Restructurings and Settlements**

The Court finds that enforcing the Forbearance Agreement would further the legitimate public policy of encouraging out of court restructurings and settlements. In re Club Tower, L.P., 138 BR at 312. According to the uncontroverted facts before the Court, the Debtor's First Bankruptcy Case was dismissed as a result of the Forbearance Agreement that the Debtor, Mr. Frye and Union Bank negotiated. It is apparent that the Debtor and Mr. Frye have enjoyed the benefit of their bargain since Union Bank did not foreclose at that time

---

[7] Although the Debtor's Plan indicates that the Debtor intends to assume various leases, there is no indication as to whether the Debtor intends to reject or assume the Forbearance Agreement. However, in her response to Union Bank's motion for relief from stay, the Debtor argues that the waiver of rights under the automatic stay, contained in the Forbearance Agreement, should not be enforced as contrary to the spirit of the Bankruptcy Code. The Debtor seeks to potentially benefit from the extension of the redemption date that was originally negotiated under the Forbearance Agreement, yet seeks to avoid this concession she made to Union Bank in consideration therefor.

7

and their redemption period was twice extended. Unfortunately, the Debtor did not sell any property or make all the payments required under the Forbearance Agreement (causing the indebtedness to Union Bank to increase over the life of the Forbearance Agreement). While the Debtor correctly points out that Union Bank benefitted by receiving additional security under the Forbearance Agreement, this argument seems to diminish the value of Union Bank's agreement not to pursue its rights against its collateral. It is undisputed that in return for extending the First Redemption Date, Union Bank sought assurances from the Debtor and Mr. Frye that they would not contest the amount owed and they would not take steps to cause Union Bank additional delay or costs in the event of a subsequent bankruptcy filing. That assurance is provided in the waiver provision of the Forbearance Agreement. Fairness requires that in the absence of extraordinary circumstances, Union Bank should be entitled to receive the benefit of its bargain. The Court is persuaded that if the Forbearance Agreement is not enforced as negotiated that it would have a chilling effect on out of court settlements. This factor weighs heavily in favor of enforcing the waiver in the Forbearance Agreement.

**(7)    Whether there Appears to be a Likelihood of Reorganization**

The likelihood of the Debtor successfully reorganizing is an open question at this time and needs to be addressed further before the Court can determine whether this would affect the enforceability of the Forbearance Agreement. Union Bank has already indicated on the record that it intends to object to the Debtor's Plan (doc. #26, p.4), based upon its inconsistency with the contract between the Parties. The Debtor's Plan, as currently drafted, reflects neither an intent to fulfill her obligations under the Forbearance Agreement nor an intent to reject the Forbearance Agreement. The Debtor's Plan purports to cure the arrearage to Union Bank over a time period of eighteen months but does not include regular payments to Union Bank within the Plan. Based upon the record before the Court, it appears that the Debtor may not be able to satisfy the criteria for confirmation of the Plan or be able to consummate of the Plan. However, the Court defers a decision on this factor until it hears the evidence the parties have on this point.

**(8)    Extent to which Union Bank Would be Prejudiced if the Waiver is not Enforced**

As referenced above, in exchange for extending the First Redemption Date, Union Bank sought assurances from the Debtor and Mr. Frye that they had no dispute with the amount owed and they would not take steps to cause Union Bank additional delay or costs in the event of a subsequent bankruptcy filing. That assurance is provided in the waiver provision of the Forbearance Agreement. The necessity of that assurance is validated by the terms of the Plan and the Debtor's objection to the instant motion. In the Plan, the Debtor asserts that the claim of Union Bank is disputed (doc. #16). The protracted litigation such an assertion can cause is precisely what Union Bank bargained to avoid in the Forbearance Agreement. If the Forbearance Agreement is not enforced as negotiated, Union Bank would have made the concessions set forth in the Forbearance Agreement and still have the costs and delay those terms were intended to avoid. This constitutes

substantial prejudice. This consideration weighs in favor of enforcing the waiver provision of the Forbearance Agreement.

**(9) Time Lag and Changes in Circumstances Between the Waiver and Bankruptcy Filing**

The Debtor has not asserted that there was a compelling change in her circumstances between the signing of the Forbearance Agreement and the current bankruptcy filing. In re Merridale Gardens Limited Partnership, *unpublished op.* No. 95-1--3091 PM (Bankr D Md Oct 19, 1995) aff'd *in unpublished op* at No S-95-3334 (D Md Feb 28, 1996). The only evident change in circumstances is the Debtor's default under the terms of the Forbearance Agreement, caused by her failure to sell a portion of her land to redeem the mortgaged property by the Third Redemption Date and corresponding failure to cure all payment defaults under the Mortgages. However, this change in circumstances does not bolster the Debtor's argument that she should be relieved of her obligation under the Forbearance Agreement, and in fact weighs in favor of enforcing it against her.

**(10) Whether Debtor has Equity in the Property and Creditor is Entitled to Relief under § 362(d)**

The Debtor asserts that she has equity in the property and the property is necessary for an effective reorganization and therefore, that granting Union Bank's motion for relief from stay would violate the Bankruptcy Code. Union Bank counters that since the Debtor waived the stay the bank is relieved of the burden of establishing the criteria of § 362(d). The Court holds that while Union Bank is not required to establish the grounds for relief as a pre-requisite to enforcement of the Forbearance Agreement, whether it would otherwise be entitled to relief from stay is a factor the Court must consider. Hence, the Court must make findings on whether the Debtor has equity in the property and whether the property is necessary to an effective reorganization. The latter analysis is circumscribed by the determination of whether the Debtor is likely to be able to obtain confirmation and to fulfill her obligations under a plan. 11 U.S.C. § 632 (d)(2)(B); United Savings v. Timbers of Inwood Forest, 484 U.S. 365, 375-76 (1988) ("there must be 'a reasonable possibility of a successful reorganization within a reasonable time...' What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*.") (emphasis in original); see also, In re Taylor, 2004 WL 1242555, *1 (Bankr. Vt. May 17, 2004.

To resolve whether the Debtor has any equity in the property, the Court needs to both fix the value of the property which is collateral for Union Bank's loans and determine the balance due Union Bank. While the Debtor asserts the amount of Union Bank's proof of claim is disputed and so states in the Plan, the record

9

reveals that the Parties both assert that the amount due and owing to be approximately $500,000.[8] Based upon the current record before the Court, the value of the property subject to the Mortgages, which under the terms of the Forbearance Agreement is "all...[the Debtor and Mr. Frye's] real property," is unclear. While the Debtor asserts that her "remaining land" is valued at more than $1.8 million, it is unclear which land "remains" and whether the Debtor has equity in the "remaining" property. Union Bank has not offered a valuation figure for the property securing the Mortgages. The Debtor does not dispute that she is in arrears or that she has failed to abide by the terms of the Forbearance Agreement but, she vehemently argues that there is equity in the mortgaged property and that the mortgaged property is necessary to an effective reorganization. Based upon the record before it, the Court cannot determine whether the Debtor has any equity in the property subject to the Mortgages or has the ability and likelihood of consummating an effective reorganization, and correspondingly cannot determine whether Union Bank is entitled to relief under § 362(d). Because the Court has identified that whether Union Bank is otherwise entitled to relief under § 362(d) is a consideration in determining the enforceability of the waiver provision of the Forbearance Agreement, an evidentiary hearing on these issues is necessary.

## **CONCLUSION**

After due consideration of the entire record before the Court and the above findings, the Court reaches three fundamental conclusions. First, that the wavier provision of the Forbearance Agreement is not *per se* enforceable but will be enforceable if, based upon the analysis of ten factors, the equities favor enforcement. Second, that based upon the record before it, the equities weigh heavily in favor of enforcing the waiver provision of the Forbearance Agreement and granting Union Bank's motion for relief from stay. Third, that additional evidence is necessary before a determination can be made on some of the factors. Thus, the Court will defer making a determination on the ultimate enforceability of the waiver provision in the Forbearance Agreement, or Union Bank's right to relief from stay, until it hears the evidence the parties have on those factors. The Court is entering an Order contemporaneously with this memorandum of decision which sets the time, scope and requirements of that evidentiary hearing.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

_____
February 24, 2005                                                                        Colleen A. Brown
Burlington, Vermont                                              United States Bankruptcy Judge

---

[8] In the Forbearance Agreement, the Debtor validated the proof of claim submitted by Union Bank in the Debtor's First Bankruptcy Case and also agreed to be liable for Union Bank's continuing costs and attorney's fees. See ¶3.2. According to the affidavit of Kenneth D. Gibbons, President of Union Bank, that amount is now $498,087.54.